**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

JANE DOE,

        *Plaintiff*,

  v.

DUKE ELLINGTON SCHOOL OF THE
ARTS PROJECT *et al.*,

        *Defendants.*

</td><td>

No. 1:21-cv-1762 (DLF)

</td></tr>
</table>

**MEMORANDUM OPINION AND ORDER**

Jane Doe alleges that a teacher at Duke Ellington School of the Arts Project ("Duke Ellington") sexually harassed and assaulted her when she was in high school. Second Am. Compl. ¶¶ 25, 28, 44–127, Dkt. 40. She also alleges that the school's administrators, including Donna Hollis, failed to report her abuse to the relevant authorities, forced her to attend classes with her abuser, and otherwise allowed the abuse to continue. *Id.* ¶¶ 138–48, 212–13. Before the Court is Hollis' Motion to Dismiss Doe's Second Amended Complaint, Dkt. 45. For the reasons that follow, the Court will deny the motion.

I.     **BACKGROUND**

Doe alleges that Mark Walker, her former photography teacher, initially targeted her for sexual mistreatment during her junior year at Duke Ellington. Second Am. Compl. ¶¶ 44–89. Exploiting his position as her instructor, Walker allegedly gathered information about Doe's personal life and gave her preferential treatment, including by purchasing food and gifts for her on numerous occasions. *Id.* ¶¶ 46–57. Doe further alleges that Walker often flirted with her and touched her inappropriately on school premises. *Id.* ¶ 78. Much of this conduct occurred at an

afterschool program that Walker hosted with the alleged purpose of grooming Doe and other students for sexual assault.  *Id.* ¶¶ 71, 76.  On some occasions, Doe alleges that she left the afterschool program with Walker and engaged in sexual acts with him.  *Id.* ¶¶ 81–83.  She also alleges that Walker sexually assaulted her at his home during the summer before her senior year.  *Id.* ¶¶ 86–88.

Throughout Doe's time at Duke Ellington, Hollis served as the school's Shepherding Coordinator.  *Id.* ¶ 16.  In that role, her responsibilities included both supervising teachers and disciplining them.  *Id.* ¶ 17.  In addition, because she was a "school official," D.C. law required her to report any "knowledge" or "reasonable . . . suspicion" of minor abuse to either the District of Columbia's Metropolitan Police Department (MPD) or its Child and Family Services Agency (CFSA).  D.C. Code § 4-1321.02(a)–(b).

In the fall of 2016, a parent allegedly alerted Hollis to an "ongoing sexual relationship" between Walker and Doe.  Second Am. Compl. ¶ 102.  The parent also conveyed that the relationship was having adverse consequences for Doe and other Duke Ellington students.  *Id.*  Although Hollis notified other Duke Ellington administrators about this report, and also met with Walker about it, she allegedly took no other action in response.  *Id.* ¶¶ 104–106, 111–114.  Doe alleges neither Hollis nor any other Duke Ellington employee ever spoke with her about the allegations.  *Id.* ¶ 110.  Hollis also allegedly allowed Walker to have "unsupervised access to various rooms and areas of the school" and "unsupervised contact with students after school hours."  *Id.* ¶¶ 33, 34.  Finally, Doe alleges that Hollis failed to report the suspected abuse to the statutorily required authorities and failed to remove Doe from her classes taught by Walker.  *Id.* ¶¶ 112–13.

Doe alleges that Walker continued to harass her after the parental complaint and until her graduation from Duke Ellington. *Id.* ¶¶ 114, 121. That harassment harmed Doe's academic performance. *Id.* ¶¶ 119–121. Doe also alleges that she continues to suffer "psychological and emotional distress as a result of the trauma" caused by both Walker's abuse and Duke Ellington's response. *Id.* ¶ 134.

Doe filed her initial complaint against Walker, Hollis, and several other defendants in the Superior Court for the District of Columbia. *See* Complaint, Dkt. 2. The defendants subsequently removed the case to this Court on June 30, 2021. *See* Notice of Removal, Dkt. 1. Since then, the Court has twice granted Doe leave to amend her complaint. The Court first granted leave to amend on September 16, 2021, upon finding "no indication that [amendment] would cause 'undue delay,' reward 'bad faith or dilatory motive on the part of the movant,' or unduly 'prejudice' the defendants." Minute Order of Sept. 16, 2021 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court next granted leave to amend on October 20, 2021, after Doe obtained new counsel in this case. *See* Minute Order of Oct. 20, 2021. In doing so, the Court relied on Doe's representation that her previous counsel filed the first motion to amend without her approval. *See* Partial Consent Mot. to Stay Deadlines to Respond to Pleadings at 1, Dkt. 24.

On account of both the most recent amendment and a subsequent notice of partial dismissal, *see* Dkt. 44, Doe raises only one claim against Hollis. In Count VI of the Second Amended Complaint, Doe alleges that Hollis committed gross negligence by "failing to report the suspicion of [Walker's] sexual abuse" to either the MPD or the CFSA. Second Am. Compl. ¶ 212. She further alleges that Hollis was grossly negligent in requiring her "to attend classes taught by Walker" even after she learned about Walker's misconduct. *Id.* ¶ 213. Hollis moved

Case 1:21-cv-01762-DLF   Document 50   Filed 06/23/22   Page 4 of 10

to dismiss that count on January 27, 2022.  *See* Dkt. 45.  This Court has jurisdiction pursuant to

28 U.S.C. § 1367.[1]

## II.     LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to

dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P.

12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient

to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  This standard does not amount to a specific probability requirement, but it does

require "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see*

*also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief

above the speculative level.").  A complaint need not contain "detailed factual allegations," but

alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line

between possibility and plausibility."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and

the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all

inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471,

476 (D.C. Cir. 2012) (internal quotation marks omitted).  The assumption of truth does not apply,

---

[1] Doe's negligence claim against Hollis shares a "common nucleus of operative fact" with her
Title IX claim against Duke Ellington.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725
(1966).  Moreover, the Court concludes that the negligence claim neither raises a "novel or
complex issue of State law" nor "substantially predominates" over the Title IX claim.  28 U.S.C.
§ 1367(c)(1)–(2).  Finally, because the two claims turn on overlapping questions of fact, the
Court notes that considering them together would further "judicial economy."  *Gibbs*, 383 U.S. at
726.

4

however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678

(quotation marks omitted).  An "unadorned, the defendant-unlawfully-harmed-me accusation" is

not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id.*  Ultimately, "[d]etermining whether a

complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Id.* at 679.

## III.    ANALYSIS

Doe has failed to state a claim for gross negligence.  As a general rule, District of

Columbia law does not recognize degrees of negligence.  *See Hernandez v. District of Columbia*,

845 F. Supp. 2d 112, 115 (D.D.C. 2012).  Instead, a gross negligence claim is only available in

limited circumstances, such as "where gross negligence is a specific element of a claim or

defense."  *Goodrich v. Bank of Am.*, 2022 WL 1597582, at *5 (D.D.C. May 19, 2022) (quoting

*Hawkins v. Wash. Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 105 (D.D.C. 2018)).  Here,

none of Doe's causes of action require a showing of gross negligence.  *See* Second Am. Compl.

¶¶ 142, 192, 204, 209–211; *see also* 20 U.S.C. § 1681; 42 U.S.C. § 1983; D.C. Code § 4-1321;

D.C. Code § 22-3020.51.  And in any event, Doe concedes that she has not stated a claim for that

tort.  *See* Pl.'s Opp'n at 3, Dkt. 47.  For those reasons, Doe cannot obtain relief against Hollis for

gross negligence.

Doe may nonetheless argue, however, that Hollis is liable for ordinary negligence.  In her

opposition to Hollis' motion to dismiss, Doe asked this Court to construe Count VI of her

complaint as stating an ordinary negligence claim.  *Id.*  On this issue, the Court need not follow a

plaintiff's "characterization of the action" and may examine the alleged offense to determine

which causes of action the complaint actually states.  *Hawkins*, 311 F. Supp. 3d at 105 (quoting

*District of Columbia v. White*, 442 A.2d 159, 162 (D.C. 1982)).  Indeed, this Court has

previously held that a purported gross negligence claim, even if insufficient to plead gross

negligence, may nonetheless state a claim for ordinary negligence.  *See Hawkins*, 311 F. Supp.

3d at 105–06.  And in this case, Doe specifically alleges that "Hollis deviated" from the

"ordinary standard of care for educators" in her position.  *See* Second Am. Compl. ¶¶ 209, 212.

The Court will accordingly assess whether Doe has stated a claim for ordinary negligence.

      To state a claim for ordinary negligence, a plaintiff must allege facts sufficient to

establish "the existence of a duty, [a] violation of a standard of care, and [an] injury resulting as a

proximate cause of the violation."  *Jarrett v. Woodward Bros.*, 751 A.2d 972, 977 (D.C. 2000)

(citation omitted).  For this purpose, a plaintiff may establish the existence of a duty through

applicable statutes or regulations.  *See Odemns v. Dist. of Columbia*, 930 A.2d 137, 143 (D.C.

2007); *see also Jarrett*, 751 A.2d at 980 (holding that "[i]n this jurisdiction, a statute creates civil

liability where a particular statutory or regulatory standard is enacted to protect persons in the

plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish

his relationship to the statute" (internal quotation marks and citation omitted)).  Here, Doe

alleges Hollis breached both her statutory duty to report suspected abuse of a minor and her

common law duty to protect Doe from sexual harassment and assault.  *See* Second Am. Compl.

¶¶ 209, 211–213.  For the reasons that follow, the Court agrees.

      Doe is correct that Hollis owed her a statutory duty to report any suspicion of abuse to

either the MPD or the CFSA.  *See* Second Am. Compl. ¶¶ 104, 209.  Section 4-132.02 of the

D.C. Code provides that a "school official" who "knows or has reasonable cause to suspect that a

child known to him or her in his or her professional or official capacity has been or is in

immediate danger of being a mentally or physically abused or neglected child . . . shall

immediately report or have a report made of such knowledge or suspicion" to one of those two

agencies.  D.C. Code § 4-1321.02(a)–(b).  In *Roe v. Wilson*, 365 F. Supp. 3d 71 (D.D.C. 2019),

this Court found this statute imposed a legal duty on school officials to report reasonable

suspicions of sexual harassment by a student's teacher.  *See id.* at 87–88.  Hollis is clearly a

school official.  *See* Second Am. Compl. ¶ 16.  And although *Roe* was a negligence *per se* case,

*see Roe* 365 F. Supp. 3d at 87–88, the same conclusion holds in this ordinary negligence action.

*See Jarrett*, 751 A.2d at 977 (holding that a statute provided "the requisite duty and standard of

care" for suit under "common law negligence or negligence *per se*").  Doe has thus established

that Hollis owed her a duty to comply with the above reporting statute.

Moreover, Doe plausibly alleges that Hollis deviated from that duty by failing to report

her suspicions of Walker's misconduct.  *See* Second Am. Compl. ¶ 212.  In the fall of 2016, a

parent allegedly told Hollis about "an ongoing sexual relationship" between Walker and Doe,

who was a minor at the time.  *See id.* ¶¶ 45, 102.  On that basis, Doe alleges Hollis "knew or had

reason to believe" that Walker was sexually abusing her.  *Id.* ¶ 213.  Nonetheless, Doe alleges

that Hollis failed "to report the suspicion of sexual abuse" to either the MPD or CFSA as

required by § 4-1321.02.  *See id.* ¶ 212; *see also* D.C. Code § 4-1321.02(a).  And even though

Hollis allegedly reported her suspicion to the principal and assistant principal of Duke Ellington,

*id.* ¶¶ 18, 20, 104, doing so did not satisfy her separate reporting obligation under § 4-1321.02.

That statute expressly provides that reporting a suspicion of misconduct to the head of a school

"does not relieve the person who was originally required to report from his or her duty" to file a

report with the MPD or CFSA.  D.C. Code § 4-1321.02(b).  Doe has thus adequately pleaded that

Hollis breached her duty of care by violating § 4-1321.02.

Doe has separately established that Hollis owed her a common law duty, at least for the purpose of this motion.  The District of Columbia Court of Appeals has held that school districts have an "obligation to exercise reasonable and ordinary care for the protection of pupils to whom it provides an education." *Dist. of Columbia v. Doe*, 524 A.2d 30, 32 (D.C. 1987) (citation omitted).  And this Court reasoned in *Roe* that school officials with supervisory authority may be liable for the "negligent hiring, supervision, and retention" of supervisees who engage in sexual misconduct.  *See Roe*, 365 F. Supp. 3d at 86–88; *see also id.* at 87 (declining to finally resolve the issue in the "absence of a fuller record").  Here, Doe alleges that Hollis had the authority to both supervise and discipline teachers.  *See* Second Am. Compl., ¶¶ 16, 17.  She also alleges that Hollis played a role in assigning students to their specific classes and teachers.  *See id.* ¶ 213.  At this stage of the case, those allegations establish that Hollis had some duty to protect students from sexual harassment by her supervisees.  *See Graham v. City of Manassas Sch. Bd.*, 390 F. Supp. 3d 702, 713–14 (E.D. Va. 2019*)* (holding that a school principal had a duty to protect students from sexual abuse by a teacher).

Doe has further alleged that Hollis breached this duty.  Despite allegedly having "actual knowledge" of Walker's sexual relationship with a minor, Hollis allowed him "unsupervised access to various rooms and areas of the school" as well as "unsupervised contact with students after school hours."  *See* Second Am. Compl. ¶¶ 33, 34.  Doe also alleges that Hollis "forced [her] to attend classes taught by Walker after she knew or had reason to believe that Walker was alleged to have committed . . . sexual abuse."  *Id.* ¶ 213.  Finally, Doe alleges that Hollis took no remedial action in response to the report of Walker's misconduct, *see id*. ¶ 111, beyond discussing it with Walker and two other school officials, *see id.* ¶¶ 37, 104.  Drawing all

8

inferences from those allegations in Doe's favor, *see Hettinga*, 677 F.3d at 476, Doe has

plausibly alleged that Hollis exercised less than reasonable care.

Doe has further pleaded that Hollis' inaction caused her injuries.  On this point, Doe

alleges that Walker continued to harass her even after Hollis "knew or had reason to believe that"

he had engaged in sexual harassment.  Second Am. Compl. ¶¶ 114, 213.  Had Hollis reported his

alleged conduct to the MPD or the CFSA, it is plausible that Doe would not have suffered that

additional harassment.  *See Roe*, 365 F. Supp. 3d at 88.  It is also possible that Hollis could have

limited Doe's injuries by removing Doe from Walker's classes or taking some disciplinary action

against him.  *See* Second Am. Compl. ¶ 213.  For those reasons, Doe's injuries were a proximate

result of Hollis' conduct.

Finally, Doe has not waived her ordinary negligence claim.  *See* Def.'s Reply at 2, Dkt.

48.  It is true that, "if an amended complaint omits claims raised in [a prior amended] complaint,

the plaintiff has waived those omitted claims." *See Mowrer v. United States Dep't of Transp.*, 14

F.4th 723, 733 (D.C. Cir. 2021) (citation and internal quotation marks omitted).  And here,

although Doe included an ordinary negligence claim against Hollis in her First Amended

Complaint, *see* First Am. Compl. ¶¶ 112–20, Dkt. 21, there is no such claim in her Second

Amended Complaint.  Nonetheless, the Court credits Doe's representation that her initial

attorney filed the First Amended Complaint without her approval and while she was seeking new

representation in this matter.  *See* Partial Consent Mot. to Stay at 1.  And given that unusual

circumstance, the Court will not hold Doe to the representations in her First Amended

Complaint.  The defendants' argument for waiver thus falls short.

For those reasons, Doe has stated a claim for ordinary negligence against Hollis based upon both a violation of § 4-1321.02 and a breach of her separate, common law duty to reasonably supervise Duke Ellington's faculty.

Accordingly, it is

**ORDERED** that the Hollis' Motion to Dismiss, Dkt. 45, is **DENIED**.

**SO ORDERED.**

_____
DABNEY L. FRIEDRICH
United States District Judge

June 23, 2022